IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

THOMAS E. PEREZ,           *
Secretary of Labor,        *
United States Department of *
Labor,                     *
                           *
         Plaintiff,        *
                           *
    v.                     *          CV 614-053
                           *
BLAND FARMS PRODUCTION &   *
PACKING, LLC and           *
DELBERT BLAND, an individual, *
                           *
         Defendants.       *

**O R D E R**

Currently before the Court are three motions: (1) Plaintiff's motion for summary judgment (doc. 28); (2) Defendants' motion to amend (doc. 34); and (3) Defendants' motion for summary judgment (doc. 36).

## I.   **Factual Background**[1]

This is a case about Vidalia Onions. During the time relevant to this litigation,[2] Bland Farms Production and Packing,

---

[1] Unless otherwise noted, background facts in this case come from the parties' statements of undisputed facts. (Docs. 28-1, 35.)

[2] The years relevant to this litigation are the 2011-2012 onion season, the 2012-2013 onion season, the 2013-2014 onion season, and the 2014-2015 onion season. However, with respect to the 2014-2015 season, discovery in

LLC[3] ("Bland Farms") grew approximately 1,500-2,100 acres of Vidalia Onions on land it either owned or leased. Bland Farms then packed those onions in its packing shed. In the same packing shed, Bland Farms packed onions grown on land owned or leased by other onion growers, who grew onions for Bland Farms. During the period relevant to this litigation, twelve growers grew onions for Bland Farms: (1) Ronnie McLeod; (2) Jerry Pittman; (3) Gregorio Tlacuatl; (4) Brett Williams; (5) Bruce Herndon; (6) Ashley Day; (7) Mike and Travis Collins; (8) Jamie Beasley; (9) Morgan Kight; (10) Billy Burch; (11) Jasper Dirk Nail; and (12) Ty Powell Smith. Through its agronomist and production director, Omar Cruz, Bland Farms provided input and and instruction to the independent growers. For example, Cruz's input often included instructions regarding fertilizer and chemical application. For some growers he also participated in seed selection prior to planting. Cruz frequently visited the independent growers' fields, and in virtually every instance, the growers permitted Cruz to enter the fields at his discretion. Bland Farms also frequently sent quality-control teams to inspect the onions as they grew. Furthermore, in some years, Bland Farms assisted some of the growers with their harvests. And, in 2014 and 2015, Bland Farms assisted all of

this matter ended before harvesting and packing had concluded. Accordingly, the parties stipulated that any rulings by the Court will be binding with respect to that season. (Doc. 27.)

[3] Bland Farms Packing and Production, LLC is a subsidiary or Bland Farms, LLC, which is owned by Delbert Bland. Bland Farms, LLC is not a party to this litigation.

the growers with their harvests. Every independent grower grew onions exclusively for Bland Farms. Bland Farms did not pay these employees overtime for that work.

## II.  **Procedural Background**

In 2013, the Department of Labor began investigating Bland Farms' labor practices with respect to overtime compensation for Bland Farms' packing-shed employees. In May 2014, Plaintiff Thomas Perez, Secretary of Labor, initiated this action and claims that Bland Farms and Delbert Bland violated the Fair Labor Standards Act ("FLSA") by not paying its packing-shed employees overtime during the periods in which they packed onions grown by the independent growers. (Doc. 1.) Plaintiff seeks to enjoin Defendants from violating the FLSA and requests back wages and liquidated damages. Defendants answered and, among other things, claim that the employees were exempt from the FLSA and raised a good-faith defense pursuant to 29 U.S.C. § 260. Plaintiff now moves for summary judgment on its claims against Bland Farms. Defendants move to amend their answer and assert an additional good-faith defense pursuant to 29 U.S.C. § 259. Defendants also move for summary judgment with respect to Bland Farms' alleged violation of the FLSA, both good-faith defenses, and Delbert Bland's personal liability.

### III. **Legal Standards**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes

v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

5

deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave the parties notice of the motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 41, 42.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motions are now ripe for consideration.

Additionally, as discussed more thoroughly below, a motion to amend is governed by Federal Rule of Civil of Procedure 15, and courts generally freely grant leave when necessary. However, the Court has discretion to deny leave when appropriate. See Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036, 1041 (11th Cir. 2006). And when a motion to amend is filed outside the deadline set by the Court's scheduling order, the moving party must demonstrate good cause to amend the scheduling order. Fed. R. Civ. P. 16.

## IV. Discussion

### 1. Defendants' Motion to Amend

On August 14, 2015, the filing deadline for motions in this case, Defendants moved to amend their answer to assert an additional defense, which they base on a 1985 letter from the Department of Labor. Because Defendants' request to amend is outside the date set in the Court's scheduling order, Defendants must first show good cause to amend the scheduling order. Fed. R. Civ. P. 16. Pursuant to the scheduling order, all motions to amend were due October 3, 2014. (Doc. 13.) The Court will amend its scheduling order only for good cause. Fed. R. Civ. P. 16. "The good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).

Defendants seek to amend to add a 29 U.S.C. § 259 defense based on a 1985 letter they received from the Department of Labor. Defendants claim that they did not originally plead the defense because the letter was no longer in their possession. They further argue that, despite their diligence, they did not receive a copy of the letter from Plaintiff until April 2015. The Court is not persuaded. First, the Court questions why Defendants did not include the defense in their original answer. That is, if Defendants are claiming to have relied on the letter, then they must have been aware of its existence when

7

they filed their answer. In fact, Defendants' 29 U.S.C. § 260 defense, which they did plead, is based on the same letter. (Doc. 36, Ex. 1 at 38-39.) Nonetheless, even if Defendants are excused from not including the defense in their original answer, they should have requested the letter prior to the October 3, 2014 deadline. Instead, Defendants did not request the letter from Plaintiff until they submitted their second request for production in February 2015. Accordingly, good cause to amend the scheduling order does not exist.

Even if the Court were to find good cause under Rule 16, Defendants' motion would still fail. Under Federal Rule of Civil Procedure 15, a party may amend its pleadings with the opposing party's consent or leave of the Court. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15. The Court must generally have a reason to deny a party leave to amend. See Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036, 1041 (11th Cir. 2006) ("[U]nless a substantial reason exists to deny leave to amend, the discretion of the District Court is not broad enough to permit denial." (citation omitted) (internal quotation marks omitted)). The Court may deny a motion to amend because of undue delay, undue prejudice, and futility. Id.

If the Court allowed Defendants to amend, the amendment would be futile because Defendants' 29 U.S.C. § 259 defense would fail as a matter of law. Under 29 U.S.C. § 259, an

employer may avoid liability under the FLSA if it proves that it acted in good-faith reliance on "any written administrative regulation, order, ruling, approval, or interpretation, of the . . . the Administrator of the Wage and Hour Division of the Department of Labor . . . ." 29 U.S.C. § 259. That is, the employer must prove that the act was "(1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency." Cole v. Farm Fresh Poultry, Inc., 824 F.2d 923, 926 (11th Cir. 1987). This defense is "restricted to those situations where the employer can show that the regulation, order, ruling, interpretation, administrative practice or enforcement policy . . . was actually that of the authority vested with power to issue or adopt [such regulations or interpretations] of a final nature as the official act or policy of the agency." 29 C.F.R. § 790.19. "Statements made by other officials or employees are not [such regulations or interpretations]" under 29 U.S.C. § 259.

Defendants claim to rely on a 1985 letter from Alfred Perry, the Deputy Assistant Regional Administrator for the Wage and Hour Division, which provides, in relevant part:

Where a farmer purchases a field of onions, or other crop, prior to harvest—and where this purchase is clearly for whatever may come out of the field (versus so much per bag packed)—we consider that field to belong to the farmer who purchased it. The packing of these onions would be the same as if the farmer had grown them. This packing would still constitute 'agriculture.'

On the other hand a farmer/packer might offer so much per bag rather than an offer to purchase the field. It would make no difference if the 'per bag' offer was made at the field or at the shed. These bags packed are the property of another grower. This would create a 'non-agriculture' packing shed operation . . . .

(Doc. 37, Ex. N.) Because this letter is not from the Administrator of the Wage and Hour Division of the Department of Labor, Defendants' defense would fail as a matter of law. The statute and accompanying regulation are clear that the defense may only be based on officials acting as the agency. See 29 C.F.R. § 790.19. Defendants have provided no evidence that the Regional Deputy Administrator has the authority to act as the Department of Labor.[4] Nor have they pointed to any case allowing reliance on a regional official for purposes of 29 U.S.C. § 259. Instead, Defendants rely on an Eighth Circuit case, Hultgren v. Cty. of Lancaster, 913 F.2d 498 (8th Cir. 1990), for the proposition that courts will find that officials other than the Administrator may act as the agency. The Court declines to follow Defendants' interpretation of Hultgren. First, in Hultgren, the employer

---

[4] Because Defendants moved for summary judgment on their proposed § 259 defense, the Court is able to adequately address the merits of the defense.

relied on a letter from the Deputy Administrator, not a regional official. Id. at 507. Second, allowing the employer to rely on the letter in Hultgren was not central to the court's holding because it "assum[ed] for purposes of this case that the Deputy Administrator" could act as the agency and went on to find that the employer could not assert the defense because it had not conformed with the writing. Id. at 507-508. Because Defendants have not shown that the Regional Deputy Administrator has the power to act as the agency, Defendants' § 259 defense would fail as a matter of law.[5] Accordingly, Defendants' motion to amend is **DENIED**.

## 2. Motions for Summary Judgment

Plaintiff and Defendants have both moved for summary judgment. Plaintiff has moved on only one issue, and Defendants have moved on several. The Court will first address the issue raised by both parties and then the issues raised only by Defendants.

### a. Whether Bland Farms was engaged in primary agriculture with respect to the onions grown off its land

It is undisputed that Bland Farms is subject to the FLSA and that it did not pay its packing-shed employees overtime during the relevant period; instead, the parties disagree about

---

[5] Furthermore, even if the Court allowed Defendants to amend and to rely on the 1985 letter, Defendants would still not be entitled to summary judgment on this issue. As noted, § 259 requires Defendants to have conformed with the letter, Cole, 824 F.2d at 926, meaning they would be required to show that they purchased entire fields of onions. As discussed below, there is a factual dispute about whether Defendants did so.

11

whether an exemption applies. Both parties have moved for summary judgment on the issue of whether Bland Farms was a farmer for purposes of the FLSA with respect to the independent growers' onions.[6] This issue is central to this case because, to be exempt under the FLSA's agriculture exemption, the packing-shed employees must have been engaged in agriculture when packing the onions grown by the independent farmers.

Under the FLSA, employees engaged in agriculture are exempt from the statute's maximum-hour requirement. 29 U.S.C. § 213(b)(12). That is, employers are not required to pay overtime to those employees engaged in agriculture. "'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil . . . and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market . . . ." 29 U.S.C. § 203(f). Under this definition, there are two types of agriculture: primary agriculture and secondary agriculture. Ares v. Manuel Diaz Farms, Inc., 318 F.3d 1054, 1056 (11th Cir. 2003). Primary agriculture includes, "among other things," cultivation and tillage of the soil. Id.; 29 C.F.R. § 780.105. Secondary agriculture encompasses a broader meaning of

---

[6] Defendants also address whether Bland Farms is the farmer of the onions it grew on its own land. However, that issue is not in dispute, so the Court will not address it in this Order.

12

agriculture and includes other practices, "but only if they are performed by a farmer or on a farm." Ares, 318 F.3d at 1056. (citation omitted) (internal quotation marks omitted). "The secondary practices must be performed incidentally to or in conjunction with such farming operations." Id. (citation omitted) (internal quotation marks omitted). For the agriculture exemption to apply to secondary practices, "the practices in question must relate to the farmer's own farming operations and not to the farming operations of others . . . ." Mitchell v. Huntsville Wholesale Nurseries, Inc., 267 F.2d 286, 290 (5th Cir. 1959).[7] Accordingly, in this case, the packing-shed employees fall under the agriculture exemption while packing onions grown by the independent growers only if those practices relate to Bland Farms' farming operations. Said differently, Bland Farms must be engaged in primary agriculture with regard to those onions. Defendants argue that the mere fact that the onions were grown on the other farmers' land is not dispositive and that Bland Farms farmed those onions because it provided significant input to and exercised control over the other farmers' farming operations. Plaintiff claims that Bland Farms simply provided advice.

---

[7] Pursuant to the court's holding in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), Fifth Circuit decisions decided prior to October 1, 1981 are binding in this circuit.

First, the location of farming operations is not necessarily dispositive. 29 C.F.R. § 780.140. Operations performed on land a farmer owns or leases will typically be considered that farmer's farming operations. Id. But the opposite conclusion is presumed when the operations are conducted on land that the farmer does not own or lease, and in those cases, "a careful scrutiny of the facts" is necessary. Id. Additionally, mere advice or counselling alone will not amount to farming. Mitchell, 267 F.2d at 290-91. In Mitchell, Huntsville Wholesale raised and sold nursery stock, which amounted to two-thirds of the nursery stock it sold. Id. at 288 n.2. The other one-third of its nursery stock came from other growers, and the nursery stock from other growers was stored in a separate warehouse. Id. Huntsville Wholesale purchased this nursery stock from a grower in Texas on a per-plant basis. Id. Huntsville Wholesale provided no labor, but did provide some advice regarding the nursery stock. Id. 291. Moreover, the Texas grower sold a significant amount of nursery stock to other growers. Id. at 288 n.2. The court in Mitchell determined that Huntsville Wholesale was not engaged in secondary agriculture when it housed the plants purchased from the Texas grower because it was not engaged in agriculture with respect to the growing of those plants because it did nothing more than purchase plants it intended to resale. Id. at 290-91. On the

14

other hand, when an independent grower is sufficiently integrated with the contracting party, the contracting party may be engaged in agriculture. See Wirtz v. Tyson's Poultry, Inc., 355 F.2d 255, 259-60 (8th Cir. 1966) (distinguishing Mitchell where independent poultry farmers raised chickens for a chicken company because the independent growers would not likely have raised chickens if not for the contract, the chicken company retained ownership of the chickens and covered some costs, and the independent farmers were agents of the chicken company).

In this case, the undisputed facts show that the independent growers planted and grew onions exclusively for Bland Farms. And it is undisputed that Cruz provided some form of input and direction to the growers with respect to growing the onions and that he routinely visited the growers' fields. The parties, however, dispute the significance and amount of input and direction Cruz provided the growers. Plaintiff argues that Cruz's input was merely advice because it was not binding on the growers and because Cruz was only concerned with determining whether Bland Farms would reach its production goal. Bland Farms, however, has produced contrary evidence. For example, a number of growers thought of Cruz as their manager, found his role was vital, and felt bound to follow his orders. (Doc. 37, Ex. EE at 51, 106; Doc. 39, Ex. 12 at 83-85; Doc. 37, Ex. MM at 16, 32.) In fact, there is evidence that one grower

15

considered himself "an appendix of Bland's operation." (Doc. 37, Ex. EE at 106.) The evidence also indicates that Cruz was intimately involved in the growers' planning process with respect to planting. Moreover, although Bland Farms did not harvest and physically work in every field during every relevant year, the evidence shows that it did provide some workers in some years and did harvest the crops in some years. These facts sufficiently distinguish this case from <u>Mitchell</u>. Accordingly, although there is not sufficient evidence on the record to find, as a matter of law, that Bland Farms was engaged in primary agriculture, Defendants have produced enough evidence that a reasonable fact finder could determine that Bland Farms did more than provide advice.

Additionally, there is a factual dispute regarding how Bland Farms paid for the onions. Plaintiff claims that Bland Farms only paid for the onions after they were harvested and sorted and only took those onions that met certain specifications. Defendants contend that Bland Farms purchased all of the onions while still in the field and compensated the growers based on the number of onions that met a certain grade. That is, under Defendants' theory, Bland Farms owned every onion in the field, even those that did not meet its standards. And Bland Farms' theory is supported by evidence: during one season, Bland Farms successfully enjoined a grower from selling his

onions to a third party. Although this issue is not dispositive, it provides insight as to whether Bland Farms simply agreed to purchase onions or had a more involved role.

On the evidence presented, the Court cannot say, as a matter of law, that Bland Farms was engaged in primary agriculture regarding the onions grown by the independent growers. It is also unable to say that Bland Farms was not engaged in primary agriculture. The Court, therefore, cannot determine, as a matter of law, whether Bland Farms was engaged in secondary agriculture with respect to those onions. Accordingly, the Court finds summary judgment on this issue inappropriate. Plaintiff's motion for summary judgment is **DENIED**, and Defendants' motion for summary judgment on this issue is **DENIED**.

### b. "Cover" and "Spot" purchases

Defendants also request that the Court find that, as a matter of law, certain "cover" or "spot" purchases it made are exempt from the FLSA. Defendants admit that these onions were not a part of the onions grown by the growers discussed above and that it did not pay overtime to the employees who packed these onions. And Bland Farms does not argue that it farmed these onions. Instead, it claims that these small purchases do not affect the agriculture exemption's application. According to Defendants, Bland Farms made spot purchases from Plantation

17

Sweets, RT Stanley, Ashley Day, Lauren Hutton, and Van Solkema. (Doc. 35 ¶¶ 251-260.)

As discussed above, when a seller simply purchases additional crops from an independent grower to resell, that seller is not engaged in agriculture. Mitchell, 263 F.2d at 291. Defendants contend that spot and cover purchase are exempt pursuant to the agriculture exemption. Although the Court is unaware of any controlling authority that supports Defendants' argument, other circuits appear to follow such a rule. See Wirtz v. Jackson & Perkins Co., 312 F.2d 48 (2d Cir. 1963) (finding employees who handled purchased nursery stock exempt because the stock was purchased on an emergency basis because of crop failures). This rule, however, only applies when there is a production shortfall, not simply when customer orders exceed production. Adkins v. Mid-American Growers, Inc., 167 F.3d 355, 357 (7th Cir. 1999). Here, Defendants contend that Bland Farms made the spot purchases because of weather-related crop shortages. And a declaration made by Troy Bland, Bland Farms' Operations Director, supports this argument with respect to some of these purchases. (Doc. 37, Ex. E.) However, Defendants' own evidence also contradicts this argument. In his deposition, which occurred before he made his declaration, Troy Bland testified that spot purchases include purchases made to fill special orders. (Doc. 37, Ex. I at 117.) Viewing this evidence

18

together, the Court finds that a reasonable fact finder could conclude that some of these purchases were made because of unavoidable shortages or because of orders that exceeded production. The Court, therefore, **DENIES** summary judgment on this issue.

### c. Delbert Bland's personal liability

Plaintiff brought this action against Bland Farms and Delbert Bland personally, and Defendants now move for summary judgment on Delbert Bland's personal liability. To be liable, Delbert Bland must be an employer under the definition found in 29 U.S.C. § 203. "Whether an individual falls within [that] definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity." Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (citations omitted) (internal quotation marks omitted). As an officer,[8] to be liable, he "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee[s]." Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986). Unexercised control alone is insufficient to support finding an officer personally liable. Perez, 515 F.3d at 1161.

---

[8] The parties do not actually discuss whether Delbert Bland is in fact an officer of Bland Farms, but both parties treat the issue as though he is. For purposes of this motion, therefore, the Court will do the same.

Defendants contend that there is no evidence that Delbert Bland participated in the day-to-day operations.  Instead, they argue that Bland Farms' staffing company, UBS, manages day-to-day employment matters and that Delbert Bland has not been involved in employment matters since 2011.  Plaintiff argues that UBS employees went to Delbert Bland for approval of wage increases.  Plaintiff points to two e-mails from 2013 that discuss wage increases; one reads, "Per Delbert and Troy" followed by an instruction to increase certain wages, and the other states, "Per Delbert" and addresses increasing wages. (Doc. 57, Ex. K.)  Plaintiff also points to evidence that Delbert Bland would frequent the packing shed during Vidalia Onion season to check on production.  (Doc. 39, Ex. at 52.)

Although not particularly strong, when the evidence is viewed in the light most favorable to Plaintiff, a reasonable fact finder could conclude that, as recently as 2013, Delbert Bland was involved in day-to-day decisions, such as raising wages of individual employees.  Accordingly, Defendants' motion for summary judgment on this issue is **DENIED**.

### d. Good faith under 29 U.S.C. § 260

In their answer, Defendants pleaded a good-faith defense pursuant to 29 U.S.C. § 260.  Liquidated damages are permitted for FLSA violations.  29 U.S.C. § 216.  And 29 U.S.C. § 260 provides that "if the employer shows to the satisfaction of the

20

court that [the violation] was in good faith and that he had reasonable grounds for believing that [the violation] was not a violation of the [FLSA,] the court may, in its sound discretion, award no liquidated damages . . . ." 29 U.S.C. § 260. To succeed on this defense, a defendant must show objective and subjective good faith. Dybach v. Fla. Dep't of Corrections, 942 F.2d 1562, 1566 (11th Cir. 1991). And it is a defendant's burden to show that it "had an honest intention to ascertain what [the Act] requires and to act in accordance with it." Id. (alterations in original).

Here, Defendants claim they are entitled to this defense because they relied on the 1985 opinion letter. Although Defendants have presented evidence that they relied on the letter, the Court finds it inappropriate to rule on this issue at summary judgment, especially considering the discretionary nature of the defense. Defendants may present this defense at trial, and the Court will make its ruling on the issue at that time. Summary judgment on this issue is **DENIED**.

## V.    Conclusion

For the reasons discussed above, Plaintiff's motion for summary judgment (doc. 28) is **DENIED**; Defendants' motion to amend (doc. 34) is **DENIED**; and Defendants' motion for summary

judgment (doc. 36) is **DENIED**.  This case will proceed to a bench trial.

   **ORDER ENTERED** at Augusta, Georgia this _16th_ day of March, 2016.

                                 _____
                                 HONORABLE J. RANDAL HALL
                                 UNITED STATES DISTRICT JUDGE
                                 SOUTHERN DISTRICT OF GEORGIA