**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

R. ALEXANDER ACOSTA,            *
Secretary of Labor, United      *
States Department of Labor,     *
                                *
    Plaintiff,             *
                                *
    v.                     *
                                *        CV 614-053
BLAND FARMS PRODUCTION &        *
PACKING, LLC and                *
DELBERT BLAND,                  *
                                *
    Defendants.            *
                                *
                                *

---

**O R D E R**

---

Under the Fair Labor Standards Act, employers must generally pay their employees overtime wages when the employees work more than 40 hours in a week. 29 U.S.C. § 207(a)(1). Employees "employed in agriculture," however, are not entitled to overtime wages. 29 U.S.C. § 213(b)(12). This case is primarily about whether Defendant Bland Farms Production and Packing, LLC's employees were "employed in agriculture" when they processed Vidalia onions grown by farmers other than Bland Farms Production and Packing, LLC.

The Court held a bench trial the week of February 6, 2017. The Court heard evidence from both sides and now, in accordance with Federal Rule of Civil Procedure 52(a)(1), makes its

findings of fact and conclusions of law.  In short, the Court finds that Bland Farms Production and Packing, LLC failed to pay its employees overtime in violation of the FLSA.  The Court awards back wages and a reduced amount of liquidated damages but declines to issue an injunction.  The Court also finds that Defendant Delbert Bland is not liable in his individual capacity.

## I.  Findings of Fact

Delbert Bland owns Bland Farms, LLC, which owns Defendant Bland Farms Production and Packing, LLC ("Bland Farms"). Delbert Bland began growing onions in the early 1980s.  His first field of onions was only 5 acres.  And he sold that crop out of a carport.  Since then, Bland Farms has become the largest producer of sweet onions in the country, selling around 2 million 40-pound boxes of Vidalia onions a year.  As part of its operation, Bland Farms runs a packing shed where employees process and package onions grown by Bland Farms and by other onion farmers.

Not long after he began growing onions, Delbert Bland had his first run-in with the Department of Labor.  The DOL questioned whether Bland Farms properly paid its packing-shed employees.  In response to the DOL's probe, Delbert Bland wrote the DOL requesting guidance on when Bland Farms was and was not required to pay overtime wages to its packing-shed employees.  A

2

DOL official replied, stating essentially that the FLSA's agriculture exemption would apply to the packing-shed employees as long as they were processing onions grown by Bland Farms or onions that Bland Farms purchased in the field, so long as Bland Farms purchased the entire field of onions.

In 2013, the DOL began investigating whether Bland Farms was improperly denying its packing-shed employees overtime wages. The DOL eventually filed this lawsuit alleging that Bland Farms' practices violated the FLSA because it did not pay its packing-shed workers overtime wages during the 2012, 2013, 2014, 2015, and 2016 Vidalia onion seasons when those employees processed onions grown by farmers other than Bland Farms.[1]

## A. Growing Onions

Farming Vidalia onions is a tedious job. First, a farmer must prep and sow a seedbed. Then, once the onion plants in the seedbed grow to roughly "the size of a No. 2 pencil," the farmer will pull the plants out of the ground and replant them in another field, where they will grow to maturity. While the plants are in the field, the farmer must routinely treat them with fertilizer, pesticides, herbicides, and water. When it comes time to harvest the onions, the farmer must undercut the onions and let them dry in the field. The onions are then removed from the field by hand and placed in bins. During this

---

[1] Vidalia onion season typically runs from mid-April until mid-September.

process, the tops of the onions are clipped off. The onions are then dried in mechanical dryers before they are graded, packed, and shipped. From start to finish, the process takes roughly eight months.

## B. Contract Growers

During the 2012, 2013, 2014, 2015, and 2016 Vidalia onion seasons, Bland Farms processed onions in its packing shed grown on land that it owned and leased and onions grown on land owned and leased by other onion growers ("contract growers"). These contract growers include Brett Williams, Ashley Day, Mike Collins, Morgan Kight, Jerry Pittman, Jamie Beasley, Bruce Herndon, and Ronnie McLeod. The contract growers all contracted to sell onions to Bland Farms, agreeing that they would grow the onions, which Bland Farms would later process and sell.

The contract growers were in charge of preparing the seedbeds, planting the onions, transplanting the onions, fertilizing the onions, spraying herbicides and pesticides, irrigating the onions, and harvesting the onions. The contract growers paid all the expenses of growing the onions, including the seed, fertilizer, herbicide, pesticide, and labor costs. Bland Farms would occasionally provide labor to the contract growers and would often help the contract growers haul the onions out of the field. And Bland Farms would, when necessary, advance the contract growers cash. But Bland Farms always

4

charged the contract growers for any assistance it provided and would recoup all cash advances when it sold the onions.

In most cases, Bland Farms purchased the onions from the contract growers based on a pack-out rate, meaning the amount of money a contract grower received from Bland Farms depended on how well his onions graded. Thus, for example, if 70% of a contract grower's onions graded marketable, the contract grower would receive payment only for those onions. The contract grower would not receive payment for the remaining 30%, which would be discarded because it is difficult to find a market for low-quality onions. Occasionally, Bland Farms purchased onions based on an across-the-scales method, meaning it paid a set rate for all the onions regardless of how they graded.

The risk of loss, moreover, was on the contract growers throughout the entire growing process. The contract growers carried their own crop insurance to address the risk of weather- or disease-related losses. Bland Farms took no responsibility for the onions until it purchased them. And even then, as noted, Bland Farms was generally required to pay for only marketable onions. So the contract growers also assumed the risk that their onions would grade below marketable.

## C. Omar Cruz's Input

Omar Cruz, Bland Farms' Director of Farm Production and Chief Agronomist, is in charge of onion production and quality

control.  He is essentially tasked with ensuring that Bland
Farms has high-quality onions to sell.  Mr. Cruz therefore
provided the contract growers advice about how to best grow
onions during the years they sold onions to Bland Farms.

Mr. Cruz suggested seed varieties for the contract growers
to plant, helped them choose what chemicals to apply, suggested
harvest times, and provided other advice throughout the growing
process.  The contract growers typically tried to follow Mr.
Cruz's advice because they trusted Mr. Cruz's opinion and
because, as Brett Williams put it, they "looked at Bland Farms
as the customer" and tried to grow onions that met Bland Farms'
standards.  But they were not required to follow Mr. Cruz's
advice, and the contract growers made the final decisions about
how they grew their onions.  The contract growers, and not Bland
Farms, owned the onions.  Ashley Day, for example, was
questioned during trial about why he had the final say about
what type of seed to plant, how many onions to grow, and when to
harvest his onions.  And he responded each time, "Because
they're my onions."

In short, although Mr. Cruz provided the growers with
important input, he did not control the contract growers'
operations: he could not require the contract growers to perform
any task or follow his instructions.  Rather, Mr. Cruz made
suggestions to the farmers, which they typically followed.  But

he did this to ensure that Bland Farms would be able to purchase the number of quality onions that it needed, not to protect crops owned or grown by Bland Farms.

## D. "Spot" Purchases

A few times during the relevant years, Bland Farms purchased onions from growers other than the contract growers. In 2012, Bland Farms purchased onions from Maurice Collins, who was having trouble finding a buyer. Although Bland Farms did not need more onions that year, it purchased Mr. Collins's onions because Mr. Collins, a longtime friend, was "in a bind." In 2013, Bland Farms purchased onions from Ashley Day because, like Mr. Collins, Mr. Day was in a bind that year.[2] Bland Farms also purchased onions from R.T. Stanley because Mr. Stanley did not have labor available to harvest a field of onions and Bland Farms did, so it seized the opportunity to buy more onions. These purchases were not made because of production shortfalls, and Bland Farms did not pay its packing-shed employees overtime wages when they processed these onions.

## E. 1985 Letters

In February 1985, Delbert Bland wrote a letter to the DOL requesting guidance about when Bland Farms had to pay its packing-shed employees overtime wages. In his letter, Delbert Bland noted that there had "been a question concerning the

---

[2] Mr. Day was not a contract grower in 2013.

7

difference in Agriculture [versus] Non-Agriculture in relation to buying onions in the field or at the packing shed . . . ." Delbert Bland wanted clarification about whether Bland Farms had to pay its packing-shed employees overtime wages when the employees processed onions that Bland Farms purchased from other growers.

The next month, Alfred Perry, a DOL official, responded. After briefly explaining the FLSA's agriculture exemption, Mr. Perry stated that

> Where a farmer purchases a field of onions, or other crop, prior to harvest — and where this purchase is clearly for whatever may come out of the field (versus so much per bag packed) — we consider that field to belong to the farmer who purchased it. The packing of these onions would be the same as if the farmer had grown them. This packing would still constitute 'agriculture.'

> On the other hand a farmer/packer might offer so much per bag rather than an offer to purchase the field. It would make no difference if the 'per bag' offer was made at the field or at the shed. These bags packed are the property of another grower. This would create a 'non-agriculture' packing shed operation.

In other words, according to Mr. Perry, if Bland Farms bought an entire field of onions, its packing-shed employees would be exempt from the FLSA when they processed those onions.

### F. Bland Farms' Overtime Practices

In accordance with its interpretation of Mr. Perry's letter, Bland Farms chose not to pay its packing-shed employees

overtime wages when they processed onions grown by the contract growers. In Bland Farms' view, the employees were processing onions that Bland Farms grew or that came from fields purchased by Bland Farms. The belief that Bland Farms was permitted to operate this way became common knowledge among decision-makers in the company.

Since 2012, Troy Bland, Delbert Bland's son, has made decisions about when to pay packing-shed employees overtime wages. It has always been Troy Bland's understanding that "if [Bland Farms] purchase[d] all the onions in the field, then [Bland Farms] can go to the agriculture exemption" and not pay its packing-shed employees overtime wages. That Bland Farms may operate like this, in Troy Bland's view, has "just kind of been general knowledge" around Bland Farms.

As noted, moreover, Bland Farms often paid the contract growers based on pack-out rates. Thus, Bland Farms only paid for the onions that were considered marketable and discarded the onions that did not meet that standard. Still, Bland Farms considered itself to be buying entire fields of onions for overtime purposes. In its view, the pack-out rates only affected how Bland Farms paid the growers. According to Troy Bland, a pack-out rate is "just a variable in which [Bland Farms] tr[ies] to determine how much [the growers are] going to get paid for that field of onions." Bland Farms purchased

entire fields from the contract growers, sold the marketable onions, and discarded the unmarketable onions. The total amount of unpaid overtime wages for 2012, 2013, and 2014 Vidalia onion seasons is $552,070.86.

## G. Delbert Bland's Involvement

Since Delbert Bland started growing onions in the 1980s, he has been more interested in selling onions than producing them. He therefore avoids involvement in day-to-day operations, especially in the packing shed. Since 2012, Troy Bland has handled employment matters for the packing shed, including setting wages and deciding when to pay overtime wages. Bland Farms also contracts with a staffing agency, UBS, which jointly employs the packing-shed employees with Bland Farms.

During the relevant years, Tifani Vazquez, UBS's personnel manager, worked in the packing shed. She helped manage the packing-shed employees, but only Bland Farms had the authority to set and adjust wages. When Ms. Vazquez needed permission to adjust wages, she typically spoke with either Troy Bland or David Beecher, another Bland Farms employee. She did, however, speak with Delbert Bland on occasion about wage issues during the relevant years.

In one instance, Ms. Vazquez asked Delbert Bland to approve a wage increase for an employee because she could not find Troy Bland or Mr. Beecher. The employee was threatening to quit and

Ms. Vazquez needed someone to approve the wage increase quickly. She ran into Delbert Bland, who after learning about the situation, agreed to approve the increase. Another time, Ms. Vazquez sought Troy Bland's approval of a wage increase while Troy Bland was in Delbert Bland's office. Although Delbert Bland was present for the conversation, Troy Bland actually approved the wage increase. Ms. Vazquez also approached Delbert Bland about raising the wages of all the packing-shed employees. In response, however, Delbert Bland said that he and Ms. Vazquez should talk to Troy Bland about the issue. And although the wages were ultimately increased, Delbert Bland did not make that decision.

## II.  Conclusions of Law

Plaintiff argues that Defendants violated the FLSA by not paying the packing-shed employees overtime wages when the employees processed onions by farmers other than Bland Farms. It seeks back wages, liquidated damages, and injunctive relief. Defendants contend that the packing-shed employees were exempt from the FLSA under the agriculture exemption, that Delbert Bland should not be held personally liable because he was not involved in the day-to-day operations of the packing shed, that liquidated damages are inappropriate because Bland Farms made a good-faith effort to comply with the FLSA, and that an injunction is inappropriate because nothing suggests that Bland

Farms will not comply with the FLSA following the Court's ruling in this case.

## A. The FLSA and the Agriculture Exemption

Under the FLSA, employers typically must pay their employees time and a half when the employees work more than 40 hours in a week. 29 U.S.C. § 207(a)(1). This requirement, however, does not apply to "any employee employed in agriculture." 29 U.S.C. § 213(b)(12). Agriculture, for FLSA purposes, includes, among other things, "the cultivation and tillage of the soil, . . . cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations." 29 U.S.C. § 203(f).

The definition of agriculture "has two distinct branches." Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 762 (1949). The first is primary agriculture, which includes typical farming activities like the cultivation and tillage of the soil. See id. Secondary agriculture, the second branch of agriculture, is broader and includes "any practices, whether or not themselves farming practices," such as processing crops, that are performed by a farmer or on a farm and are incident to or in conjunction with "such" farming operations. Id. at 762-63. Secondary practices therefore "must relate to the farmer's

12

own farming operations and not to the farming operations of others . . . ." <u>Mitchell v. Huntsville Wholesale Nurseries, Inc.</u>, 267 F.2d 286, 290 (5th Cir. 1959). Thus, the processing of crops grown by other farmers is "incidental to, or in conjunction with, the farming operation of the other farmers . . . ." <u>Id.</u>

It is undisputed that Bland Farms did not pay its packing-shed employees overtime wages during the relevant time period, even when the employees were processing onions grown by the contract growers. The controversy in this case centers on whether the decision not to pay those employees overtime wages was permissible under the FLSA. Bland Farms contends that it was because the packing-shed employees were engaged in secondary agriculture. But that is true only if Bland Farms was so intimately involved in the contract growers' operations that it should be considered the farmer of those onions. In other words, this case hinges on whether Bland Farms was engaged in primary agriculture with respect to the contract growers' operations. If it was, then the packing-shed employees' processing of the contract growers' onions was secondary agriculture. But if not, then the packing-shed employees were not performing practices incident to or in conjunction with Bland Farms' farming operations and thus were entitled to overtime compensation.

Providing input and advice to growers from whom a business eventually buys harvested crops is insufficient to constitute primary agriculture. See Mitchell, 267 F.2d at 291. At least one court, however, has held that when farming operations are "completely integrated," one farmer's employees may be exempt from the FLSA when performing secondary-agricultural practices with respect to another farmer's products. See Wirtz v. Tyson's Poultry, Inc., 355 F.2d 255, 259 (8th Cir. 1966).

In Mitchell, a nursery wholesaler sold nursery stock. 267 F.2d at 288 n.2. It grew two-thirds of its nursery stock. A portion of the remaining one-third was grown by contract growers but processed by the wholesaler's employees. Under its contracts with the growers, the wholesaler purported to lease the land that the plants were grown on, claimed ownership of the plants, and agreed to make cash advances to the growers. Despite the language of the contract, however, the wholesaler did not own or take responsibility for all of the plants; it did not pay for culls or for plants destroyed before harvest. Rather, it paid only for plants that were deemed merchantable.

The DOL sued the wholesaler, claiming it violated the FLSA by not paying overtime wages to the employees who processed the nursery stock grown by the contract growers. The wholesaler argued that the agriculture exemption applied because it was the farmer of the nursery stock grown by the contract growers. The

14

court rejected this argument, holding that although the wholesaler did "contribute counsel and advice, [did] in some instances make advances, [did] furnish a farm market, and [did] in other ways, as the purchaser of the bushes, assist the growers," the contract growers, and not the wholesaler, were the farmers of the nursery stock. Id. at 291. Indeed, the court noted, "[t]o permit this sort of arrangement to be called farming . . . would be not to give a broad construction to the statutory exemption but to do away with it altogether . . . ." Id.

In Tyson's Poultry, on the other hand, the Eighth Circuit affirmed a district court's ruling that the agriculture exemption applied to employees of Tyson's Poultry who processed eggs produced by chickens grown by contractors because, among other things, the growers and the company were "completely integrated." 355 F.2d at 256-58. The court distinguished Mitchell because, among other things, Tyson's Poultry bore the risk of loss, the contract growers were the agents of Tyson's Poultry, Tyson's Poultry provided all the feed and medicine for the chickens, and Tyson's Poultry owned the chickens and the eggs throughout the whole process.

Bland Farms argues that Omar Cruz was so involved in the contract growers' operations that Bland Farms was the farmer of the contract growers' onions and thus that the agriculture

15

exemption applied to the packing-shed employees when they processed those onions. But much like the contract growers in Mitchell, the contract growers here were the farmers of the onions they grew. Although Bland Farms assisted the contract growers, Mr. Cruz could not require them to follow his advice, and the contract growers would sometimes disregard Mr. Cruz's recommendations. And Bland Farms did not own the onions throughout the growing process. The contract growers owned the onions. Indeed, when questioned about why he made the final decisions about the onions he planted, one contract grower repeatedly responded, "Because they're my onions." The contract growers carried the risk of loss and paid all costs involved in growing the onions. And although Bland Farms would sometimes advance the contract growers cash and help with harvesting, it always deducted the amounts advanced and the costs of its services from what it paid the contract growers.

In sum, Bland Farms was not the farmer of the onions grown by the contract growers. Thus, the processing of those onions was "incidental to, or in conjunction with, the farming operations," Mitchell, 267 F.2d at 290, of the contract growers and not Bland Farms. The agriculture exemption therefore did not apply to the packing-shed employees when they were processing those onions because the employees were not performing secondary-agricultural practices at that time.

16

## B. Back Wages

Because Bland Farms failed to pay its packing-shed employees overtime wages when the employees processed onions grown by the contract growers, the employees are entitled to back wages under the FLSA. See 29 U.S.C. § 216(b). The parties have stipulated that the amount of unpaid overtime wages for the 2012, 2013, and 2014 Vidalia onion seasons totals $552,070.86.[3] The parties have also stipulated that the Court's ruling will apply equally to the 2015 and 2016 seasons, though they have not yet calculated the amounts owed for those years. Accordingly, the Court awards $552,070.86 in overtime wages for the 2012, 2013, and 2014 seasons, plus overtime wages for the 2015 and 2016 seasons. The parties must calculate the wages owed for the 2015 and 2016 seasons and jointly submit the amounts to the Court within **14 days** from the date of this order.

## C. Liquidated Damages

Under the FLSA, district courts must typically award liquidated damages in an amount equal to the actual damages awarded. See 29 U.S.C. § 216(b) ("Any employer . . . shall be liable to the employee or employees affected in the amount of their unpaid [wages] . . . and in an additional equal amount as

---

[3] Bland Farms urges the Court to calculate damages on a week-by-week basis. Thus, if the Court found that Bland Farms was not the farmer of only some of the contract growers' onions, then it should award back wages only for the weeks that the packing-shed employees processed onions grown by those growers. But because Bland Farms was not the farmer of any of those onions, this analysis is unnecessary.

17

liquidated damages.").  But a court may reduce the amount of liquidated damages awarded "if the employer shows to the satisfaction of the court" that the employer acted in good faith and with the reasonable belief that it was complying with the FLSA.  29 U.S.C. § 260.  An employer who violates the FLSA bears the burden of proving that it is entitled to a reduced amount of damages under § 260.  Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1271 (11th Cir. 2008).  And the "employer must show that it acted with both objective and subjective good faith."  Id.

Relying on the 1985 letter from the DOL official, Bland Farms urges the Court to award no liquidated damages.  In his letter, the DOL official stated that when "a farmer purchases a field of onions, or other crop before harvest — and where this purchase is clearly for whatever may come out of the field" the DOL considered that field to belong to that farmer.  Thus, according to the official's interpretation of the law, a farmer who purchases an entire field of onions need not pay overtime wages to its employees who process those onions.

Bland Farms contends that it acted in good faith and with the reasonable belief that it was in compliance with the FLSA because it denied its packing-shed employees overtime wages only when they processed onions grown in fields purchased by Bland Farms — that is when Bland Farms purchased entire fields of

18

onions. Bland Farms has continued to operate this way since it received the 1985 letter. Indeed, by the time Troy Bland began making overtime decisions, it was common knowledge at Bland Farms that overtime pay was not necessary when Bland Farms purchased entire fields of onions.

Plaintiff argues that because Bland Farms paid for only marketable onions, it did not purchase entire fields of onions and thus did not comply with the 1985 letter. But Bland Farms used the pack-out rates to calculate how much it would pay for fields of onions, not to determine what onions it purchased. Bland Farms took possession of all the onions, but it did not pay for the onions that did not grade marketable because those onions were virtually worthless. Bland Farms therefore attempted to comply with the terms of the letter.

The Court is satisfied that Bland Farms "had an honest intention to ascertain what [the Act] requires and to act in accordance with it." Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1566 (11th Cir. 1991) (alteration in original) (citation omitted) (internal quotation marks omitted). Bland Farms sought the counsel of the DOL about how to comply with the law and followed the DOL's interpretation of the law.[4] The Court

---

[4] Plaintiff briefly argues that Bland Farms has taken inconsistent positions about whether it farmed the onions it processed or whether it purchased fields of onions. But these practices are not incompatible. When purchasing onions from the contract growers, Bland Farms could have been attempting to both farm the onions and purchase them in the field. Indeed,

19

is thus persuaded that Bland Farms acted in good faith and with the reasonable belief that it was in compliance with the FLSA from the date it received the letter from the DOL official until the date Plaintiff filed this lawsuit.

The Court, however, is unconvinced that Bland Farms continued to reasonably rely on the letter after Plaintiff filed suit. By that time, it should have been clear to Bland Farms that the DOL no longer held the opinion expressed in the 1985 letter. When Plaintiff filed suit, Bland Farms should have known — whether it agreed with the DOL or not — that the DOL believed that Bland Farms owed overtime wages to its employees when the employees processed onions grown by other growers, even if Bland Farms purchased entire fields of onions. This is not to say, however, that Bland Farms did not continue to believe that it was in compliance with law. As shown by this litigation, Bland Farms has continued to assert — regardless of the DOL's position about purchasing fields of onions — that Bland Farms was actually the farmer of the onions its employees processed. Thus, the Court holds here only that, for purposes of § 260, Bland Farms could no longer rely on the 1985 letter.

during the relevant years, the growers grew a set number of acres for Bland Farms and Bland Farms purchased all those onions (that graded marketable). Thus, although the Court rejects Bland Farms' position that it farmed those onions, Bland Farms has not taken inconsistent positions by arguing that it both farmed the onions and purchased entire fields of onions.

Because Bland Farms acted in good faith and with the reasonable belief that it was in compliance with the law, the Court exercises its discretion to reduce the amount of liquidated damages Bland Farms must pay. For the 2012, 2013, and 2014 Vidalia onion seasons, Bland Farms must pay liquidated damages totaling $94,888.69, which represents the amount of unpaid overtime wages that accumulated during the 2014 season after Plaintiff had filed this lawsuit. The Court awards the full amount of liquidated damages for the 2015 and 2016 seasons.

## D. Delbert Bland's Individual Liability

An individual cannot be held liable under the FLSA unless he is an employer within the meaning of the statute. Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008). An employer under the FLSA is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An individual will fall within this definition only if he is "involved in the day-to-day operation or ha[s] some direct responsibility for the supervision of the employee[s]." Perez, 515 F.3d at 1160. And "unexercised authority is insufficient to establish liability as an employer." Id. at 1161.

Plaintiff has sued Delbert Bland in his individual capacity, claiming he is the employer of the packing-shed

employees. But the Court disagrees. Delbert Bland was not involved in the day-to-day operations of the packing shed during the relevant years. He focused his attention instead on selling onions. And since 2012, Troy Bland has handled all employment matters for the packing shed. Delbert Bland did possess the authority to approve wage increases, and he did exercise that authority once during the relevant seasons. But he did so only because it was an emergency: Ms. Vazquez needed someone to approve a wage increase for an employee before that employee walked off the job and could not find anyone else to help. In fact, when Ms. Vazquez later approached Delbert Bland about increasing the wages for all of the packing-shed employees, Delbert Bland instructed her to speak with Troy Bland.

Because Delbert Bland was not involved in the day-to-day operations of the packing shed, he was not an employer under the FLSA. The Court therefore will not hold him liable for Bland Farms' FLSA violations.

## E. Injunctive Relief

District courts may, "for cause shown," enjoin violations of the FLSA. 29 U.S.C. § 217. But the Eleventh Circuit "has held repeatedly that 'obey the law' injunctions are unenforceable." Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1222 (11th Cir. 2000). An injunction prohibiting an employer from

22

future FLSA violations is appropriate only if "the previous conduct of the employer and the dependability of [its] promises for future compliance" show that an injunction is necessary to prevent future violations. See Dunlop v. Davis, 524 F.2d 1278, 1279-81 (5th Cir. 1975) (holding that an injunction was appropriate because the employer intentionally tried to avoid paying back wages that he admitted he owed, falsified payment receipts, and made misrepresentations to the DOL); Wirtz v. Atlas Roofing Mfg., 377 F.2d 112, 114-17 (5th Cir. 1967) (holding that an injunction was appropriate because the employer continued to violate the FLSA after multiple investigations and lawsuits and after stipulating that it would comply with the law).

Plaintiff asks the Court to enjoin Bland Farms from future FLSA violations. Plaintiff argues that Bland Farms has "not come forward with any evidence that suggests that [it] will voluntarily comply with the [law] going forward" and points to the fact that Bland Farms has continued to deny overtime wages to the packing-shed employees during Vidalia onion season. Although it is true that Bland Farms has not produced any evidence that it will comply with the law once it receives this Court's ruling in this case, nothing suggests that it will not. That Bland Farms has refused to pay overtime wages to the packing-shed employees throughout this litigation does not mean

that it will continue that practice after receiving this Court's adverse ruling. Rather, Bland Farms' continued denial of overtime wages pay is consistent with the position it has taken throughout this litigation: that overtime pay was not due because Bland Farms farmed the onions grown by the contract growers. And although the Court has rejected Bland Farms' theory, it "was not far fetched" and was legally sound enough to survive summary judgment. See Wirtz v. Hartley's, Inc., 245 F. Supp. 101, 106 (S.D. Fla. 1965) (declining to enjoin an employer that asserted a plausible argument and noting that the employer did not commit "a clear violation of the Act without valid excuse or explanation").

Because the Court is unpersuaded that Bland Farms will continue to violate the FLSA following the issuance of this ruling, an injunction is not proper in this case. The Court thus denies Plaintiff's request for a permanent injunction.

## F. Spot Purchases

As noted, Bland Farms made spot purchases during the relevant seasons. At summary judgment, Bland Farms argued that the agriculture exemption continued to apply when the packing-shed employees processed these onions. But because Bland Farms did not assert this argument in its post-trial brief, the Court assumes that it has abandoned its previous position. Still, for the sake of completeness, the Court briefly addresses the issue.

24

The Court is not aware of any binding authority on this issue, but other circuits have recognized that when a business otherwise covered by the agriculture exemption makes purchases to cover production shortfalls, the business does not necessarily lose its protection. See Adkins v. Mid-American Growers, Inc., 167 F.3d 355, 357 (7th Cir. 1999); Wirtz v. Jackson & Perkins Co., 312 F.2d 48, 51 (2d Cir. 1963). Even assuming the Eleventh Circuit would follow such an approach, Troy Bland admitted at trial that Bland Farms purchased Maurice Collins's and Ashley Day's onions because they were having trouble finding buyers and R.T. Stanley's onions because Mr. Stanley did not have enough labor to harvest the onions. Bland Farms did not make these purchases because of production shortfalls. The agriculture exemption therefore did not apply when the packing-shed workers were processing these onions.

### III. Conclusion

In sum, the Court finds that Defendant Bland Farms Packing and Production, LLC violated the FLSA by not paying its packing-shed employees overtime wages when they processed onions grown by farmers other than Bland Farms. The Court therefore awards back wages totaling $552,070.86 for the 2012, 2013, and 2014 Vidalia onion seasons, plus back wages for the 2015 and 2016 Vidalia onion seasons. The Court exercises its discretion to reduce the amount liquidated damages awarded and awards

25

$94,888.69 for the 2014 season and a full amount for the 2015 and 2016 seasons. The Court finds that Defendant Delbert Bland is not liable for Bland Farms' FLSA violation. And the Court denies Plaintiff's request for a permanent injunction.

Furthermore, the parties are **ORDERED** to jointly calculate the amount of back wages owed for the 2015 and 2016 seasons and, within **14 days** from the date of this order, provide that amount to the Court. Once the parties have done so, the Court will enter the appropriate judgment.

**ORDER ENTERED** at Augusta, Georgia this 3/5 day of July, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA